**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **HASAN ZAY DELAWAR KHAN** | **CIVIL ACTION NO. 1:26-CV-1279** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE S. MAURICE HICKS, JR.** |
| **MELLISSA HARPER, ET AL.** | **MAGISTRATE JUDGE DAVID J. AYO** |

## REPORT AND RECOMMENDATION

Petitioner Hasan Zay Delawar Khan,[1] a detainee in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE") proceeding *pro se*, petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241.[2]  Respondents oppose the petition.  [Doc. 7].  For reasons below, the Court should deny the petition.

### Background

Petitioner is a citizen of Afghanistan.  He entered the United States on August 2, 2022, "as [an] 'OAR' (Operation Allies Refuge)."  [Doc. 7, p. 1].  Petitioner was taken into immigration custody on December 1, 2023.  [Doc. 1, p. 4].

On March 6, 2024, an immigration judge ordered Petitioner removed from the United States to Afghanistan.  [Docs. 1, p. 4; 1-2, p. 8].  Petitioner did not appeal the removal order. [Doc. 1, p. 4].

---

[1] Petitioner's "A-Number" is 243-167-772.

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

Petitioner filed this proceeding on March 18, 2026. [Doc. 1, p. 8]. He claims that it has been over two years since his removal order became final, ICE has failed to remove him, and his detention has become infinite. *Id.* at 6. He "has complied with all" the Government's requirements to facilitate his removal to Afghanistan. [Doc. 1-1, p. 3].

Respondents opposed the petition on June 1, 2026. [Doc. 7]. Petitioner did not file a reply.

### Law and Analysis

Under 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." Under Section 1231(a)(6), "An alien ordered removed who is inadmissible[,] . . . removable[,] . . . or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." In *Zadvydas v. Davis,*, 533 U.S. 678, 682, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001), the Supreme Court construed Section 1231(a)(6) "to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review."

"[T]he Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' 533 U.S., at 699, 121 S.Ct. 2491 and it further held that six months is a presumptively reasonable period, *id.,* at 701, 121 S. Ct. 2491. After that, the Court concluded, if the alien 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing [with evidence] or release the alien." *Jennings v. Rodriguez*, 138 S. Ct. 830, 843 (2018) (quoting *Zadvydas*, 533

2

U.S. at 699).[3] "[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas*, 533 U.S. at 701. If removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700.

"[R]eview must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700.

Here, Respondents argue: "Petitioner has frustrated removal efforts on multiple occasions thereby tolling his removal period." [Doc. 7, p. 4].

In *Balogun v. I.N.S.*, 9 F.3d 347, 351 (5th Cir. 1993), the Fifth Circuit held "that if it is shown that petitioner by his conduct has intentionally prevented the INS from effecting his deportation, the six-month period should be equitably tolled until petitioner begins to cooperate with the INS in effecting his deportation or his obstruction no longer prevents the INS from bringing that about."

Here, Petitioner's removal order became final on April 5, 2024. On June 24, 2024, however, Petitioner intentionally prevented his removal when he "refused to board [a] flight and was returned to the Alexandria Staging Facility." [Doc. 7, p. 2]. From May 14, 2025, to June 13, 2025, Petitioner failed to complete "specific requirements" to assist in obtaining a travel document. [Doc. 7-4, p. 1].

---

[3] "The alien bears the initial burden of proof in showing that no such likelihood of removal exists." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

"Another failure to comply notice dated November 24, 2025 notes that a Deportation Officer attempted to serve documents upon Petitioner on both October 27, 2025 and November 24, 2025, including a travel document application, but that Petitioner refused to receive the documents on both occasions and 'continues to refuse to cooperate with ICE.'" [Docs. 7, p. 2; 7-5, p. 1].

"Yet another failure to comply notice was served upon Petitioner on January 26, 2026, again advising Petitioner that although he was advised on December 2, 2025 that he had 30 days to comply with his obligation to assist in obtaining a travel document, he had failed to do so and was 'acting to prevent [his] removal from the United States.'" [Docs. 7, p. 3; 7-6, p. 1].

"[O]n March 3, 2026, Petitioner was again served with a failure to comply notice, again advising him he had failed to provide information to obtain a travel document and was preventing his removal from the United States." [Docs. 7, p. 3; 7-7, p. 1].

Petitioner was detained for 80 days (or 2 months, 19 days), before he first impeded his removal (i.e., from April 5, 2024, when his removal order became final, to June 24, 2024, when he refused to board a flight) and thereby tolled the six-month period. Petitioner then continued to toll the six-month period by impeding his removal. Respondents demonstrate that Petitioner failed to assist in his removal, at the latest, on February 26, 2026. [Doc. 7-7, p. 1]. However, there is no indication in the record that Petitioner has begun to cooperate with removal efforts. Consequently, the six-month period remains tolled, and Petitioner's petition is, effectively, premature. He has not been detained beyond the six-month presumptively reasonable period in *Zadvydas*.

The remainder of the six-month period—two months and nineteen days already elapsed untolled—is equitably tolled until Petitioner begins to cooperate with the Government in effecting his deportation or until Petitioner's non-cooperation no longer prevents the Government from removing him. *See Balogun*, 9 F.3d at 351. If Petitioner (i)

4

begins to cooperate with efforts to remove him (or shows the date he began cooperating, if he has already started cooperating), (ii) is the detained for approximately three months and eleven days more after he begins cooperating, and (iii) can provide good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future, then Petitioner may re-file his *Zadvydas* claim.

### Conclusion

For the reasons above, **IT IS RECOMMENDED** that Petitioner Hasan Zay Delawar Khan's *Zadvydas* claim be **DISMISSED WITHOUT PREJUDICE** to Petitioner's right to re-file the claim if he has good reason to believe, in light of any changes in circumstance or new evidence of his cooperation, that his removal is not significantly likely in the reasonably foreseeable future.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.**

In Chambers, Lafayette, Louisiana, this 22nd day of June, 2026.

_____
David J. Ayo
United States Magistrate Judge